# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

|  |  |
|---|---|
| LARA GEORGE MANSOUR, a/k/a LARA SAMAHA,<br><br>    Plaintiff,<br><br>  v.<br><br>MONA BACH MANSOUR, individually; ALEXANDER GEORGE MANSOUR, individually; ROLLY GEORGE MANSOUR, individually; DANY GEORGE MACARON, individually; SALIM JRESSATI, individually; SAMIR HAMMOUD, individually; ZIAD MEKANNA, individually; ZIAD ABOU HAIDAR, individually; and PASCAL ANTOUN, individually;<br><br>    Defendants. | **Case No.: 1:17-CV-24206-JEM** |

# LEBANESE GOVERNMENT DEFENDANTS'
# RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60

Defendants former Minister of Justice of the Republic of Lebanon Salim Jressati, the Honorable Ziad Mekanna, the Honorable Samir Hammoud, the Honorable Ziad Abou Haidar, and Mr. Pascal Antoun, Esq., Advisor to the Minister of Justice of the Republic of Lebanon (the "Lebanese Government Defendants"), by and through undersigned counsel, respond to Plaintiff's Motion for Relief from a Judgment or Order [ECF No. 83] (the "Motion").

Plaintiff's motion is frivolous, as is the case she seeks to reinstate. It was properly withdrawn by Plaintiff and her counsel more than three months ago, and no good cause or exceptional circumstance warrants vacating the order of dismissal, which Plaintiff and her counsel

themselves, sought and obtained from the Court.

As set forth below, this case has no business being filed in this Court. The underlying action is a lawsuit by a Lebanese citizen, against Lebanese public officials, involving ongoing legal proceedings brought by her in Lebanon, under Lebanese law, relating to her alleged rights in property located in Lebanon that was owned by her father, a citizen of Lebanon who died in Lebanon and whose estate was administered. Dissatisfied with the results thus far in those proceedings, Plaintiff and her lawyers have concocted a suit against officials of the Lebanese government, including respected members of the Lebanese judiciary, whom she holds responsible for decisions rendered against her in the Lebanese courts.

Apart from the obvious fact that the Lebanese Government Defendants are immune from suit in the United States, and the fact that they have no contacts with this forum giving rise to personal jurisdiction over them, the Court need not even reach the merits of the Amended Complaint, because the Motion for Relief is procedurally defective, fails to comply with the Local Rules, is untimely, and falls woefully short of the legal standard required to vacate a final judgment, especially when that judgment was entered at the request of the movant.

Based on the foregoing, and as set forth below in the following incorporated Memorandum of Law, the Motion should be denied.

## MEMORANDUM OF LAW

## I.   FACTUAL SUMMARY

For the past four years, Plaintiff has filed and pursued criminal proceedings in Lebanon against several of her family members related to the estates of her father and aunt in Lebanon.[1]

---

[1]   "In Lebanon, as with many civil law jurisdictions, private citizens may initiate private criminal actions for their civil claims if there is an element of a criminal offense attached to such claims. These actions may be presented to prosecutors or directly to the first investigative judge.

Instead of awaiting the outcome of those proceedings, which are currently on appeal in part, and clearly dissatisfied with the results thus far, Plaintiff brought a separate lawsuit in 2017 – the Amended Complaint – in the United States against her Lebanese family members and several Lebanese government officials alleging a vast conspiracy directed against her based on wholly fabricated allegations of public corruption and other malfeasance. The Lebanese Government Defendants deny the sweeping and defamatory claims in that lawsuit.[2]

### A.    Plaintiff Initiates Three Criminal Proceedings in Lebanon

Plaintiff's father died in 2014. Shortly after his passing, on June 16, 2015, Lara Mansour ("Mansour" or "Plaintiff") filed the first of three private criminal actions in Lebanon alleging theft, embezzlement, and fraud against her mother and siblings before the First Investigative Judge in Mount Lebanon.[3] Throughout these proceedings, Plaintiff – who is, in fact, a Lebanese citizen – represented to the Court that she is a resident of Lebanon who lives in the Achrafieh district of Beirut at the Samaha Building, 6th Floor, Zahrat Ihsan Street, Ashrafieh, Beirut, Lebanon.[4]

Shortly thereafter, Lara Mansour filed a second private criminal complaint against her

---

Private parties sometimes wrongfully seek to present civil claims (including, for example, for fraud) as criminal complaints, to take advantage of the prosecutorial power.  In many instances, such claims are determined to be of a civil nature only and thus the criminal prosecution is declined.  If a criminal action is dismissed, claimants may pursue their claims in civil court subject to applicable law." Declaration of Hon. Ziad Mekanna ("Mekanna Declaration"), attached hereto as Exhibit "A" at ¶5, n.1. Plaintiff has opted for the tactic of initiating private criminal actions against her defendant family members rather than pursuing her civil claims before the Lebanese civil courts. As explained below, the option of pursuing civil claims remains available to her.

[2]      See Declaration of Hon. Salim Jreissati ("Jreissati Declaration"), attached hereto as Exhibit "B" at ¶8; Mekanna Declaration, Ex. A at ¶16 ; Declaration of Hon. Ziad Abou Haidar ("Abou Haidar Declaration"), attached hereto as Exhibit "C" at ¶8; Declaration of Hon. Samir Hammoud ("Hammoud Declaration"), attached hereto as Exhibit "D" at ¶10; Declaration of Pascal Antoun ("Antoun Declaration"), attached hereto as Exhibit "E" at ¶8.

[3]      Mekanna Declaration, Ex. A at ¶15.

[4]      See Power of Attorney of Lara Mansour, a true and correct translated copy of which is attached hereto as Exhibit "F".

mother and siblings on October 8, 2015, before the Public Prosecutor for the Court of Cassation, which generally investigates only severe crimes. This case was later transferred to the Public Prosecutor of Mount Lebanon, who upon review of the claim, transferred it to the First Investigative Judge, as per local procedure.[5]

On June 13, 2016, these criminal cases were consolidated and transferred to Judge Ziad Mekanna, among the most well-respected jurists in Lebanon. Judge Mekanna spent over a year investigating the case, including meeting with and questioning the parties.[6] On March 22, 2018, after diligently and fully investigating the case and questioning all of the relevant parties, Judge Mekanna rendered his decision, in which he concluded that (i) there was no evidence of forgery by any of the Defendants, and (ii) the legal elements for the crimes of fraud, theft, and embezzlement were not satisfied.[7] The Claimant appealed the Decision, which remains pending, and was free to pursue civil claims before the Lebanese civil courts pursuant to Lebanese law.[8] At no point during the entirety of the proceeding before Judge Mekanna or any of the other judges involved in her claims in Lebanon, did Plaintiff object to the legality of the investigation or file a request to recuse any judge from any of her cases.[9]

In the meantime, on September 5, 2016, Plaintiff filed a third private criminal complaint with the Office of the Chief Prosecutor against nine individuals[10] alleging forgery and the use of

---

[5]     Mekanna Declaration, Ex. A at ¶6.
[6]     Id. at ¶8.
[7]     Id. at ¶9.
[8]     Id. at ¶¶9-10.
[9]     As set forth in Judge Mekanna's declaration, it is possible under Lebanese law to seek the recusal of a judge. Parties may also initiate disciplinary complaints against judges. Mekanna Declaration, Ex. A at ¶12.
[10]    Rabih Jamil Noureddine, Mohamad Ali Barbar, Ali Ahmad Abou Hamdan, Marlene Layoun, Fadi Layoun, Amira Ahmad Maarabouni, Houssein Ajaj Abou Hamdan, Esin Nicolas Njaim, and Bassam Najib Najjar.

forged documents in connection with a fraud.[11] Assistant Chief Public Prosecutor, Judge Charbel Bou Samra, referred the case to the Central Detective Agency for investigation, and on January 27, 2017, after the investigation, decided not to proceed for lack of evidence.[12]

**B.     Plaintiff Initiates this Litigation in the Southern District of Florida**

Plaintiff first initiated the present action in the Southern District of Florida with the filing of the Complaint on November 17, 2017. See Complaint [ECF No. 1]. In this initial version of the Complaint, Plaintiff named all of the Lebanese Government Defendants except Mr. Antoun. Having filed the Complaint, Plaintiff allowed the case in the Southern District of Florida to remain dormant for almost a year before doing anything else, until October 17, 2018, when she filed the Amended Complaint. See Amended Complaint [ECF No. 7]. In the Amended Complaint, she named all of the Lebanese Government Defendants for the first time in this case. See Amended Complaint [ECF No. 7]. The Lebanese Government Defendants received copies of the Complaint and other case documents by international courier in February 2019.[13]

**C.     Defamation Claims against Plaintiff in Lebanon**

In the face of Plaintiff's allegations in the Amended Complaint, Dany Maacaron ("Maacaron"), counsel for Mansour's mother and siblings in Lebanon, filed a criminal complaint against Plaintiff in Lebanon alleging civil and criminal defamation and slander. Under Lebanese law, slander against a judge is a felony. Judge Mekanna independently filed a similar action for, among others, slander and defamation (collectively, the "Defamation Actions").[14] In such cases,

---

[11]     Hammoud Declaration, Ex. D at ¶6.
[12]     Id. at ¶6.
[13]     See, e.g., Mekanna Declaration, Ex. A at ¶14. The Lebanese Government Defendants do not concede that service of process was effected properly and reserve all defenses, including, but not limited to, the right to object or otherwise move to quash service of process.
[14]     Mekanna Declaration, Ex. A at ¶16.

when a defendant cannot be located, a prosecutor may, in the regular course, issue a "search and investigation warrant" for the defendant (an "Arrest Warrant").[15] Such warrants, which allow authorities to arrest a defendant at the airport and other points of entry, are issued in the normal course after making failed attempts to locate a defendant and remain valid for a renewable period of 30 days in accordance with Article 24 of the Lebanese Code of Criminal Procedure.[16] Their main purpose is to permit the prosecutor and/or investigative judge to question the defendant.[17]

### D. Plaintiff's Arrest and Questioning in Connection with the Criminal Defamation Cases Filed Against Her

As a result of the Arrest Warrant issued against her, Plaintiff was detained at Beirut-Rafik Hariri International Airport upon arriving in Lebanon on April 2, 2019. None of the Lebanese Government Defendants were involved in Plaintiff's arrest or questioning.[18] Following her arrest, Plaintiff's counsel communicated with U.S. counsel for the Lebanese Government Defendants demanding that the Lebanese Government Defendants immediately intervene extra judicially in the ongoing Lebanese proceedings and "assist and [sic] in her release."[19]

### E. Plaintiff's Settlement and Voluntary Dismissal

In the following days, Plaintiff's Lebanese counsel engaged in negotiations with Maacaron as a consequence of which both Mansour and Maacaron agreed to withdraw all their claims. None of the Lebanese Government Defendants were involved in these negotiations.[20] On April 5, 2019, Plaintiff's Florida counsel signed and filed the Notice of Voluntarily Dismissal with Prejudice in

---

[15]    Id. at ¶17.
[16]    Id. at ¶18.
[17]    Id. at ¶18.
[18]    Mekanna Declaration, Ex. A at ¶19; Hammoud Declaration, Ex. D at ¶9; Abou Haidar Declaration, Ex. C at ¶7; Jreissati Declaration, Ex. B at ¶7; Antoun Declaration, Ex. E at ¶7.
[19]    A true and correct copy of the April 2, 2019 correspondence from Lorne Berkeley is attached as Exhibit "G" ("April 2, 2019 Correspondence").
[20]    Mekanna Declaration, Ex. A at ¶20; Hammoud Declaration, Ex. D at ¶8; Abou Haidar Declaration, Ex. C at ¶8; Jreissati Declaration, Ex. B at ¶6; Antoun Declaration, Ex. E at ¶5.

this case [ECF No. 81].[21] After learning from Plaintiff's Lebanese counsel about the settlement, Judge Mekanna also agreed to withdraw the Defamation Action he had initiated in Lebanon.[22] On April 8, 2019, this Court entered a Final Order of Dismissal [ECF No. 82].

### F.    Plaintiff's Motion for Relief

Surprisingly, and without notice or any effort to meet and confer in accordance with the Local Rules of this Court, Plaintiff filed her present Motion more than two months after voluntarily dismissing the case and returning to the United States from Lebanon. The Motion, unsupported by any testimony or other evidence, doubles down on the scurrilous allegations in the Amended Complaint and requests that the Court set aside its April 8, 2019 Final Order of Dismissal With Prejudice.

Apart from its procedural irregularities, as discussed below, Plaintiff's unsupported allegations in the Motion of mistreatment by public officials in Lebanon are completely false.[23]

## II.    PLAINTIFF'S MOTION IS PROCEDURALLY DEFECTIVE AND SHOULD BE STRUCK

As a threshold matter, the Motion should be denied because Plaintiff failed to make <u>any</u> effort to meet and confer prior to filing. Local Rule 7.1(A)(3) requires that the moving party make a good faith effort prior to filing "any motion in a civil case," and does not identify a motion under Fed. R. Civ. P. 60 as an exception. <u>See</u> S.D. Fla. L.R. 7.1(A)(3). A movant must have a give-and-take exchange with opposing counsel to meet the Rule's requirement of a good faith conference. <u>Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.</u>, No. 07-61879, 2008 WL 5427785, at *1 (S.D. Fla. Dec. 30, 2008). Consistent with this obligation, Local Rule 7.1.A.3 further requires that

---

[21]    Plaintiff's Florida counsel, Lorne Berkeley, did not inform undersigned counsel in advance of filing the Voluntary Dismissal.

[22]    Mekanna Declaration, Ex. A at ¶20.

[23]    <u>See</u> Mekanna Declaration, Ex. A at ¶16; Hammoud Declaration, Ex. D at ¶10; Abou Haidar Declaration, Ex. C at ¶8; Jreissati Declaration, Ex. B at ¶8; Antoun Declaration, Ex. E at ¶8.

the moving party certify either that they made "reasonable efforts to confer … which efforts shall be identified with specificity in the statement." <u>See</u> <u>id</u>.

"Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." <u>Id</u>. Such a failure to comply with the meet and confer requirement has been found to be "dispositive," especially in cases, such as this one, where the moving party made no efforts whatsoever to meet and confer prior to filing its motion. <u>See, e.g.</u> <u>Cicuitronix, LLC v. Kapoor</u>, No. 15-cv-61446 (S.D. Fla. Dec. 16, 2016); <u>Andre v. Gonzales, et al.</u>,  No. 10-20536-CV, 2010 WL 3585238, at *2 (S.D. Fla. Sept. 7, 2010).

Plaintiff failed to make any effort – much less a good faith effort – to meet and confer with the Lebanese Government Defendants or their counsel. Notably and tellingly, Plaintiff did not include a certification of good faith conference in the Motion, because no such efforts were made by Plaintiff or her counsel. As a result of Plaintiff's complete failure to comply with the Local Rules of this District Court, the Motion should be denied.

## III.    APPLICABLE STANDARD

Even if the Court were to permit the Motion to proceed despite Plaintiff's failure to comply with the Local Rules, the Motion nevertheless fails under the applicable standard and burden of proof imposed under the Federal Rules of Civil Procedure with regard to motions under Rule 60(b).

Motions for relief from judgment are "generally not favored" and should be granted "only upon a showing of exceptional circumstances." <u>United States v. International Broth. of Teamsters</u>, 247 F.3d 370, 391 (2d Cir. 2001). In general, "courts require that the evidence in support of [a Rule 60(b) motion] be 'highly convincing,' that a party show good cause for the failure to act

sooner, and that no undue hardship be imposed on other parties." Kotlicky v. United States Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).

To prevail under Rule 60(b)(3), the moving party must "prove[] by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F. 3d 1303, 1314 (11th Cir. 2007) (citing Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000)). The moving party must also "show that the conduct prevented the losing party from fully and fairly presenting his case or defense." Frederick, 205 F.3d at 1287. Accordingly, the burden of proof is unquestionably on the moving party. See Assman v. Fleming, 159 F.2d 332, 336 (8th Cir. 1947). "[F]raud is not to be presumed, but must ordinarily be proven by clear and convincing evidence." Id. See also Frederick, 205 F.3d at 1287. "Clear and convincing evidence entails proof that a claim is 'highly probable,' a standard requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt." Ward v. Hall, 592 F. 3d 1144, 1177 (11th Cir. 2010) (citing United States v. Owens, 854 F.2d 432, 436 n. 8 (11th Cir.1998)).

Plaintiff has also invoked Rule 60(b)(6), which allows a court to provide relief from a judgment for "any other reason justifying relief from the operation of the judgment." However, it is well established that relief under this clause may be invoked only when relief under the other grounds enumerated under Rule 60(b) are not available. Griffin v. Swim-Tech Corp., 722 F. 2d 677, 680 (11th Cir. 1984). "The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." Id. (citing United States v. Swift & Co., 286 U.S. 106, 119 (1932). Even under exceptional circumstances, the decision to grant Rule 60(b)(6) relief is a matter for the court's sound discretion. Galbert v. W. Caribbean Airways, 715 F.3d 1290, 1294 (11th Cir. 2013).

## IV.     THE MOTION FALLS SHORT OF PLAINTIFF'S HEAVY BURDEN

### A.     Plaintiff Has not Provided Any Evidence in Support of the Motion

Initially, the Motion fails because the relief sought is based entirely on unsupported allegations. As with her Amended Complaint, Plaintiff's Motion alleges a supposed conspiracy directed against her by members of her family, purportedly with the support of an extensive network of current and former Lebanese government officials acting in their official capacities – including the current and former Justice Ministers, and several judges and prosecutors. However, Plaintiff notably fails to provide <u>any</u> evidence, whether in the form of testimony or documents, in support of her Motion. Additionally, of course, there is no such evidence because, as set forth in Section IV(C), *infra*, the gravamen of her request for relief rests upon the legally unsupportable position that her arrest and detention was improper – a position which flies in the face of applicable Lebanese law and procedure.

The Motion, entirely devoid of evidence, is much like her Amended Complaint, which makes allegations against the Lebanese Government Defendants based largely "upon information and belief."[24] Indeed, the only support for the relief sought in the current Motion are circular citations to the allegations, upon information and belief, alleged in the Amended Complaint.

Under Rule 60(b), fraud and misconduct may not be presumed, but rather must be proven by clear and convincing evidence. When considering a motion under Rule 60(b), the Eleventh Circuit has held that "[c]onclusory averments of the existence of fraud made on information and

---

[24]     Such "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" are widely disparaged by the Courts and, unlike other factual assertions in a complaint, are not taken as true at the dismissal stage. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 551, 557 (2007) (declining to take as true the conclusory allegation "upon information and belief"); Aldana v. Del Monte Fresh Produce, NA, Inc., 416 F. 3d 1242, 1246 (11th Cir. 2005); US ex rel. Clausen v. Laboratory Corp., 290 F. 3d 1301, 1310-11 (11th Cir. 2002) (pleadings involving fraud claims under Rule 9(b) "generally cannot be based on information and belief").

belief and unaccompanied by a statement of clear and convincing probative facts which support such belief <u>do not serve to raise the issue of the existence of fraud</u>."[25] <u>Booker v. Dugger</u>, 825 F.2d 281, 284-85 (11th Cir. 1987) (emphasis added).

Plaintiff's unsupported and conclusory allegations do not amount to evidence and certainly do not meet the burden of proof under Rule 60(b). As a consequence, the Motion is insufficient on its face and should be denied.

### B.      Plaintiff's Motion is Not Timely

Motions under Rule 60(b) must be made within a reasonable time. Fed. R. Civ. P. 60(c)(1).[26] The question of reasonableness must be considered on a case by case basis in light of "the circumstances of each case to determine 'whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner.'" <u>BUC Intern. Corp. v. International Yacht Council</u>, 517 F. 3d 1271, 1275 (11th Cir. 2008).

Rule 60(b) does not "provide a license for litigants to sleep on their rights." <u>See</u> <u>Stansell v. Revolutionary Armed Forces of Colombia</u>, 771 F. 3d 713, 737-738 (11th Cir. 2014) (citing <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 271 (2010)) (refusing to vacate a judgment pursuant after a delay of **four months**). <u>See also</u> <u>Central Operating Co. v. Utility Workers of America</u>, 491 F. 2d 245, 253 (4th Cir. 1974) (refusing to vacate a judgment pursuant to Rule 60(b)(1) after a delay of less than **four months** and referring to the delay as "inexcusable dereliction"); <u>Jones v. Phipps</u>, 39 F. 3d 158, 165 (7th Cir. 1994) (refusing to vacate a judgment after a delay of **five weeks**).

---

[25]      The Court in <u>Booker</u> concluded that such statements were insufficient, even when included in a sworn statement. Plaintiff has not filed any such statement in this case, but is traveling instead solely on the unsupported claims in her Complaint and unverified Motion.
[26]      With regard to Rules 60(b)(1)-(3) this time period is subject an additional outside limit of "no more than a year after the entry of the judgment or order or date of the proceeding."

In this case, Plaintiff filed the Motion on June 3, 2019, **two months** after filing the Voluntary Dismissal with Prejudice on April 5, 2019, which was followed by the Final Order of Dismissal on April 8, 2019. Plaintiff provides no explanation for the delay. Nor could she.

According to news reports, Plaintiff returned to Miami on April 12, 2019. At that point, she certainly could have filed her Motion for Relief without fear of retaliation. Whether she was waiting to be sure that the defamation actions against her in Lebanon were dismissed, or hoping for a favorable outcome in her appeal of the case she filed in Lebanon, is unknown. What is clear is that either way she was gaming both this Court and the Lebanese judicial system. From the time of her arrival in the U.S. in April, to the filing of her motion in June, neither Plaintiff nor her counsel made any effort to contact the Lebanese Government Defendants or their counsel to engage in a good faith negotiation regarding her motion to renew this lawsuit.

The prejudice to the Lebanese Government Defendants from Plaintiff's shenanigans is unmistakable. They have been forced to engage in frivolous litigation brought by Plaintiff accusing them of malfeasance in the performance of their public duties in Lebanon. As a result of Plaintiff's conduct and belated filing of the Motion, they have been compelled on two separate occasions to engage counsel in Lebanon and in the United States, as well as investing considerable personal time and resources to defend themselves against Plaintiff's unsubstantiated attacks. They also, in good faith, and in reliance on Plaintiff's representations, as described above, withdrew their Defamation Actions in Lebanon following Plaintiff's voluntary dismissal in the United States.

### C. Plaintiff Fails to Allege any Conduct Justifying Relief from the Judgment under Rule 60(b)(3)

Even if the Court considers that Plaintiff's Motion is timely and meets some minimum evidentiary threshold, the Motion nevertheless fails because Plaintiff has not shown – and cannot show – that her decision to dismiss the case was the result of duress or other misconduct by any of

the Defendants.

"Duress" has been defined by Florida courts as "a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." Crago v. Citibank, 610 So. 2d 65, 67 (Fla. 4th DCA 1992) (citing Cooper v. Cooper, 69 So.2d 881, 883 (Fla. 1st DCA 1954); Herald v. Hardin, 95 Fla. 889, 116 So. 863 (1928)). More generally, "duress" is defined in Fla. Jur. 2d as "any wrongful act of one person that compels a manifestation of apparent assent by a second person to a transaction without the second person's volition, or as compulsion or restraint by which a person is illegally forced to do, or forbear from doing, some act." 20 Fla.Jur.2d, Duress and Undue Influence, 324. "Duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will." See Woodruff v. TRG-Harbour House, Ltd., 967 So. 2d 248, 250 (Fla. 3rd DCA 2007) (citing McLaughlin v. Fla., Dep't of Natural Res., 526 So.2d 934, 936 (Fla. 1st DCA 1988)). "[I]t is not improper and therefore not duress to threaten what one has a legal right to do." City of Miami v. Kory, 394 So. 2d 494, 498 (Fla. 3rd DCA 1981). The mere fact that Plaintiff's choice was made in the face of "unpleasant alternatives" – claims in Lebanon based on her defamatory statements – does not mean that it was made under duress. Hargray v. City of Hallandale, 57 F. 3d 1560, 1568 (11th Cir. 1995) (in the employment context).

Despite Plaintiff's claims and unsupported assertions regarding her detention in Lebanon, she has not demonstrated that there was anything wrongful – much less illegal – about the Defamation Actions or her treatment in Lebanon. Plaintiff was the defendant in the Defamation Actions in Lebanon, where she has initiated and engaged in extensive litigation herself.[27] In

---

[27]    See, e.g., Mekanna Declaration, Ex. A at ¶16.

accordance with Lebanese law, Plaintiff was arrested and detained because an Arrest Warrant was issued when she could not be found after criminal actions – the Defamation Actions – were filed against her. This is a standard procedure in Lebanon intended to give the investigating judge the opportunity to question the defendant. While Plaintiff, a Lebanese citizen and resident, may disagree with the laws of Lebanon authorizing her detention, she is not above the law, and there is certainly no wrongful misconduct in Lebanon applying its own internal laws to its own citizen.

Finally, Plaintiff and her husband clearly had the opportunity and did in fact consult with their counsel – both in Lebanon and in the United States – in making the decision to voluntarily dismissal her U.S. litigation last April, which is a factor to consider and weigh in the considering whether there was duress. See Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy, 180 So. 2d 503, 506 (Fla. 2nd DCA 1965).[28] Significantly, as well, Plaintiff's counsel apparently made no mention to the Court at the time of the filing (which he signed) that the voluntary dismissal was anything other than a voluntary good faith dismissal of the action. Plaintiff's about face and allegations of duress, more than two months later, should be given no credence.

> **D.  Plaintiff may not Seek Relief under Rule 60(b)(6) and, in any event, "Extraordinary Circumstances" do not Exist to Justify Such Relief**

Plaintiff argues that the alleged conduct gives rise to relief under the "fraud" and "misconduct" prongs of Rule 60(b)(3). Consequently, her arguments under Rule 60(b)(6), which are grounded in precisely the exact same unsubstantiated allegations as her arguments under Rule 60(b)(3), are misplaced and relief under Rule 60(b)(6) should be denied.

Rule 60(b)(6) is frequently referred to as a "residual" or "catchall" clause, because it "applies only to cases that do not fall into any of the other categories listed in parts (1)-(5) of Rule 60(b)." US v. Real Property & Residence, 920 F. 2d 788, 791 (11th Cir. 1991) (citing Klapprott v.

---

[28]   See April 2, 2019 Correspondence, Ex. G.

United States, 335 U.S. 601, 614-15 (1949)); see also Rismed Oncology Systems, Inc. v. Baron, 297 F.R.D. 637, 655 (N.D. Ala. 2014), aff'd, 638 Fed. Appx. 800 (11th Cir. 2015). Put simply, "clause (6) and clauses (1) through (5) are mutually exclusive." Real Property & Residence, 920 F. 2d at 791 (citing 7 J. Moore, Moore's Federal Practice, ¶ 60.27, at 60-266 (2d. ed. 1987); Klaprott, 335 U.S. at 614-15).

In any event, Plaintiff has failed to show "exceptional circumstances" sufficient to justify relief from the final judgment under Rule 60(b)(6). This broad umbrella provision is not to be applied "liberally," as Plaintiff claims, but only as an extraordinary remedy where, absent such relief, "extreme" and "unexpected" hardship will result. Apart from the complete lack of evidentiary support, as set forth above, Plaintiff has not shown that she will suffer "extreme" and "unexpected" hardship. The notion that she suffered an "unexpected" hardship as a consequence of the Final Order of Dismissal is belied by the fact that it was prompted by her own voluntary dismissal, which was tied to the related dismissal of the Defamation Actions in Lebanon.

## V.  THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO GRANT THE RELIEF SOUGHT IN THE MOTION

In the exercise of its discretion, the Court should place this Motion in broader context and, given the futility of the underlying pleading, deny the Motion.

### A.  The Court does not have Personal Jurisdiction over any of the Defendants

The Court should deny the Motion for Relief and decline to vacate the voluntary dismissal because there is no basis for the Court to exercise personal jurisdiction over the Lebanese Government Defendants. The allegations in the Amended Complaint do not establish a *prima facie* showing of personal jurisdiction over any of the Lebanese Government Defendants. See Madara v. Hall, 916 F. 2d 1510, 1514 (11th Cir. 1990) ("the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant."). To make a *prima facie* showing, the

Complaint must "present enough evidence to withstand a motion for directed verdict." Id.

The exercise of personal jurisdiction over any Defendant also must comport with principles of constitutional due process. See Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir.1988) (quoting International Shoe Co., 326 U.S. at 316, 66 S.Ct. at 158). Each Defendant must have "sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction," and that the exercise of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice' under the circumstances." Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014).

Plaintiff acknowledges in the Amended Complaint that the Lebanese Government Defendants are Lebanese residents and citizens. Plaintiff does not – and cannot – plead that any of the Lebanese Government Defendants have homes, bank accounts, telephone numbers, or any other trace of presence in the United States that could subject them to the general jurisdiction of the Court. Moreover, the causes of action Plaintiff asserts against the Lebanese Government Defendants arise out of actions they allegedly took in Lebanon involving the lawsuits Plaintiff filed there.[29] As a result, Plaintiff's allegations fail to plead a jurisdictional basis under Florida's Long-Arm Statute. See Fla. Stat. 48.193. "Florida's long-arm statute is to be strictly construed." Sculptchair, Inc. v. Century Arts, Ltd., 94 F. 3d 623, 627 (11th Cir. 1996) (citing Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 891 (11th

---

[29]     Not one of the causes of action plead against the Lebanese Government Defendants states a claim. These include claims for fraudulent misrepresentation, fraud, forgery, conspiracy, conversion, and constructive trust as to each of the Lebanese Government Defendants. Rather, Plaintiff's claims as to the Lebanese Government Defendants are egregious examples of the kind of conclusory pleadings rejected by the federal courts. See Iqbal, 556 U.S. at 672, 678-79; Twombly, 550 U.S. at 556. They certainly fall embarrassingly short of the standards for pleading fraud under Fed. R. Civ. P. 9(b) and reflect Plaintiff's bad faith. See, e.g., Friedlander v. Nims, 755 F. 2d 810 (11th Cir. 1985).

Cir.1983)). "Under Florida law, the plaintiff bears the burden of proving personal jurisdiction: When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." Sculptchair, 94 F. 3d at 627 (11th Cir. 1996) (citing Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir.1990)) (internal quotations omitted). Florida's Long-Arm Statute requires a showing that the non-resident party, for example, conduct business in Florida, commit a tort in Florida, enter into a contract in Florida, solicit business in Florida, or product products consumer in Florida. See Fla. Stat. 48.193.

Plaintiff's conclusory jurisdictional allegations that "money originated in the United States, which was stolen from banks that do business in the United States," and "all of the Defendants engage in business in the United States," without any factual basis – and without plausible facts demonstrating that they do business in Florida, or that they engaged in any conduct here, much less conduct that has a substantial nexus to Plaintiff's claims against the Lebanese Government Defendants – is facially deficient and fails to state a basis for jurisdiction. See Complaint [ECF No. 7] at ¶1. See Lapaglia v. Transamerica Cas. Ins. Co., 155 F. Supp. 3d 153, 155 (D. Conn. 2016) (holding that jurisdictional allegations are subject to the plausibility standard) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

Plaintiff, who bears the burden of proof, has failed to sufficiently plead any element of the Long-Arm Statute, much less sufficient minimum contacts to withstand Constitutional scrutiny. Even if she had done so, Defendants have responded with sworn declarations confirming that they have no presence or interests in Florida and that Plaintiff's claims do not arise out of any conduct

by them in Florida.[30] Accordingly, the Amended Complaint fails to allege facts sufficient to establish that any of the Lebanese Government Defendants may be subject to either general or specific personal jurisdiction.

### B.   The Lebanese Government Defendants have Immunity from the U.S. Proceedings

The Amended Complaint should also be dismissed because the Lebanese Government Defendants are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 et seq., and the common law doctrine of foreign official immunity.

Plaintiff's claims arise solely from the Lebanese Government Defendants' official duties as current and former judges, prosecutors, and ministers,[31] including the following:

- Judge Mekanna dismissed Plaintiff's Lebanese criminal action. Am. Comp. at ¶36.

- Judge Abou Haidar presided over a criminal claim against Plaintiff. Id. at ¶33.

- Judge Hammoud declined to provide Plaintiff and her Lebanese counsel with confidential investigative materials. Id. at ¶38.

- Minister Jreissati allegedly ordered that none of the defendants in Plaintiff's Lebanese litigation be arrested, and later ordered prosecutors not to advance criminal matters Plaintiff had filed in Lebanon. Am. Comp. at ¶¶34-36.

- Mr. Antoun, who was an advisor to Minister Jreissati, allegedly communicated with

---

[30]     Mekanna Declaration, Ex. A at ¶4; Hammoud Declaration, Ex. D at ¶5; Abou Haidar Declaration, Ex. C at ¶4; Jreissati Declaration, Ex. B at ¶5; Antoun Declaration, Ex. E at ¶5.

[31]     Subject to disciplinary actions and complaint, the Lebanese Government Defendants are given absolute immunity in cases arising from their official functions under Lebanese law. See Mekanna Declaration, Ex. A at ¶15. As a consequence, Plaintiff is seeking to do an end-run around the Lebanese justice system – which she selected for her case in the first instance – by suing the Lebanese Government Defendants personally in the United States. She has litigated in Lebanon for several years and, only now, after perceived setbacks in her case has elected to adopt a strategy of collaterally attacking prosecutors and judges, many of whom have only been peripherally involved in the case. This principle of judicial immunity is widely accepted in international law, as reflected by its adoption in the Seventh United Nations Convention for the Prevention of Crimes and the Treatment of Criminals held in Milan between August 26 and September 6, 1985. See General Assembly of the United Nations 32/40 dated Nov. 29, and 40/146 dated Dec. 13, 1985 at Articles 15 and 16.

prosecutors and judges on the Minister's behalf. Id. at ¶¶36-37.[32]

The common law doctrine of foreign official immunity extends the immunity of a foreign state to "any other public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." Smith v. Ghana Commercial Bank, Ltd., No. 10-4655, 2012 WL 2930462, at *9 (D. Minn. June 18, 2012) (citing Restatement (Second) of Foreign Relations Law § 66(f) (Am. Law. Inst. 1965)). "Allowing an American court to reach the merits of a suit against a public official for acts taken on behalf of the foreign state, would certainly affect the 'power and dignity' of that foreign state." Id. The factual background of Ghana Commercial Bank is virtually identical to this case and entailed allegations involving decisions by the Ghanaian attorney general whether or not to pursue charges against individuals who were alleged to have defrauded plaintiff. Id. at *10.

In addition to common law foreign official immunity, the Court would also be required to dismiss the action on the basis of the FSIA, which is the "sole basis for obtaining jurisdiction over a foreign state," because despite Plaintiff's choice to plead claims against the Lebanese Government Defendants individually, the actually party in interest is the Republic of Lebanon. As noted above, all of Plaintiff's false allegations in the Amended Complaint against the Lebanese Government Defendants are directly related to their official duties. Ghana Commercial Bank, 2012 WL 2930462 at *10 ("Plaintiff's allegations against Ghana's Attorney General render the Republic of Ghana the real party in interest here and show that Plaintiff seeks to hold the Attorney General liable for acts performed in his official capacity."). See also Odhiambo v. Republic of Kenya, 930 F.Supp.2d 17, 34 (D.D.C.2013) (dismissing claims against individual defendants where "the suit [was] in all respects a suit against the Kenyan government"); Mohammadi v. Islamic Republic of

---

[32]    Notably, most of the allegations against Minister Jreissati and Mr. Antoun, among others, are asserted "upon information and belief."

<u>Iran</u>, 947 F. Supp. 2d 48 (D.D.C. 2013), aff'd 782 F. 3d (D.C. Cir. 2015) (dismissing claims against individual government officials because the claims plead were actually claims against the foreign state). As a result, the claims against the Lebanese Government Defendants must be dismissed and any such claims – in the doubtful event that any viable claims are available here – must be asserted against the real party in interest, the Lebanese state.

Accordingly, both common law foreign official immunity and the FSIA compel dismissal of Plaintiff's lawsuit against the Lebanese Government Defendants.

### C.       International Comity

As a matter of international comity, even were the Court inclined to vacate the judgment of dismissal, which it should not, it should abstain from proceeding with this case and defer to the Lebanese courts, before which Plaintiff has initiated criminal proceedings arising from precisely the same facts.

U.S. courts may dismiss or stay a domestic action based on the interests of our government, the foreign government and the international community in resolving the dispute in a foreign forum. <u>See</u> <u>Ungaro-Benages v. Dresdner Bank AG</u>, 379 F. 3d 1227, 1238 (11th Cir. 2004). As part of this analysis, federal courts evaluate several factors, including the strength of the United States' interest in using a foreign forum, the strength of the foreign governments' interests, and the adequacy of the alternative forum. <u>Id</u>.

The Court should dismiss this proceeding based on the doctrine of international comity. Multiple parallel proceedings are currently pending arising from the precise facts alleged in this case. Plaintiff's claims arise directly out of the decisions rendered by the Lebanese courts and by Lebanese prosecutors whether to bring a criminal action or not. The Lebanese government unquestionably has the greater interests in this matter because all of the allegations involve conduct

in Lebanon by Lebanese nationals (including Plaintiff) and residents involving a Lebanese estate and the Lebanese judicial system.

As noted above, for an American court to essentially "reach the merits of a suit against a [foreign] public official for acts taken on behalf of the foreign state," would certainly affect the 'power and dignity' of that foreign state." <u>Id</u>. The Amended Complaint essentially seeks to entangle this Court in ongoing legal proceedings in Lebanon to influence their outcome. Even if Plaintiff could plead sufficient facts, which she has failed to do here, her claims would require this Court to decide on the legality of matters decided by the Lebanese courts under Lebanese law.

As a matter of comity, this Court should decline to consider the common law fraud claims asserted against the Lebanese Government Officials for conduct arising from their official duties in connection with the ongoing proceedings in Lebanon. To do otherwise would invite foreign courts to second guess legal proceedings.

## <u>CONCLUSION</u>

The Lebanese Government Defendants respectfully request that the Court deny Plaintiff's Motion, and grant any such other and further relief the Court deems just and proper.

July 17, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/ **Harout J. Samra**_ _____
Harout J. Samra
Florida Bar No. 70523
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel.: (305) 423-8500
Fax: (305) 437-8131
harout.samra@dlapiper.com
ariana.amar@dlapiper.com

*Counsel for Defendants Hon. Salim Jressati, Hon. Ziad Mekana, Hon. Samir Hammoud, Hon. Ziad Abou Haidar, and Mr. Pascal Antoun*

- 21 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that the foregoing is being served this day upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 */s/ **Harout J. Samra***
Harout J. Samra, Esq.

## SERVICE LIST

**DANIELS, RODRIGUEZ, BERKELEY DANIELS & CRUZ, P.A.**
Lorne E. Berkeley, Esq.
lberkeley@drbdc-law.com
vmunoz@drbdc-law.com
Gregory L. Bianco, Esq.
gbianco@drbdc-law.com
4000 Ponce de Leon Boulevard, Suite 800
Coral Gables, Florida 33146
Tel: (305) 448-7988
Fax: (305) 448-7978

*Counsel for Plaintiff*
*Lara George Mansour*

**COVINGTON & BURLING LLP**
Andrew E. Siegel
asiegel@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: +1 202 662 6000

*Counsel for Plaintiff*
*Lara George Mansour*
*(Admitted Pro Hac Vice)*