UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: **17-24206-CIV-MARTINEZ-OTAZO-REYES**

LARA GEORGE MANSOUR a/k/a
LARA SAMAHA, Married name;

        Plaintiff,

v.

MONA BACH MANSOUR, individually;
ALEXANDER GEORGE MANSOUR, individually;
ROLLY GEORGE MANSOUR, individually;
DANY GEORGE MACARON, individually;
FADI WADIH LAYOUN, individually;
RABIH JAMIL NOUREDDINE, individually;
MOHAMMED ALI BARBAR, individually;
ALI AHMAD BOU HAMDAN, individually;
MARLENE WADIH LAYOUN, individually;
AMIRA AHMAD MARABOUNI, individually;
SALIM JREISSATI, individually;
ZIAD MEKANNA, individually;
SAMIR HAMMOUD, individually; and,
ZIAD ABO HAIDAR, individually,

        Defendants.
_____/

**PLAINITFF'S REPLY IN SUPPORT OF THE PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT [D.E. 83]**

**COMES NOW**, the Plaintiff, LARA GEORGE MANSOUR a/k/a LARA SAMAHA ("LARA" or Plaintiff), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure hereby files this Reply in Support of the Motion for Relief from Judgment [D.E. 83] and directed at the Response in Opposition [D.E. 94] filed by the various Defendants (hereinafter the "Defendants") and states as follows:

**BACKGROUND**

This dispute relates to the estate of GEORGE MANSOUR ("GEORGE") and LARA EVELYN ("EVELYN"), LARA's father and aunt respectively. [D.E. 7, at pp.2-5]. The estate in question, between land and cash, is estimated at approximately Fifteen Million U.S. Dollars

($15,000,000). *Id*. Plaintiff alleges that the Defendants orchestrated a conspiracy to defraud the Plaintiff and steal certain property and funds owned by/entitled to Plaintiff. *Id*.

Before this litigation could begin in earnest, LARA was lured to return to Lebanon under the guise of resolving the estate dispute. See **Exhibit 1** at p. 2. In actuality, the Defendants arranged this ruse for to hold LARA hostage and extort her for a dismissal here. *Id* at pp. 2-4.

On April 2, 2019, LARA and her husband, a U.S. citizen, ELIE SAMAHA ("ELIE") traveled to Lebanon together. *Id*; See also: **Exhibit 2** at pp. 2-3. Upon arrival on April 2, 2019, LARA was arrested by Lebanese officials and detained in an underground cell, without light, air conditioning, food or water. See **Exhibit 1** at pp. 2-4. During her detainment, LARA was subjected to inhumane treatment and psychological abuse from guards. *Id*. ELIE, after inquiring after his wife's whereabouts, was also imprisoned in a cell with no light, air conditioning, food or water. See **Exhibit 2** at pp. 2-4. LARA and ELIE were imprisoned until April 11, 2019. *Id*.

The purpose of LARA and ELIE's detainment soon became clear: LARA and ELIE were instructed that unless Plaintiff dismissed the Amended Complaint, then-pending before this Court, they would be subjected to a three (3) year imprisonment and hard labor. *Id*. Naturally, under duress and in fear for her life, LARA agreed to dismiss this action. *Id*. At Defendants' demand, Plaintiff's undersigned counsel file a Notice of Voluntary Dismissal of this action and delivered copies of same to Defendants. See **Exhibit 3** at pp. 2-4. On April 4, 2019, a Notice of Voluntary Dismissal was filed. [D.E. 81]. On April 8, 2019, this Court entered its Final Order of Dismissal. [D.E. 82]. On April 11, 2019, after proof of the dismissal was provided to Defendants, LARA and ELIE were released from imprisonment. See Exhibits 1-3. On June 3, 2019, after LARA and ELIE returned to the U.S., Plaintiff filed its Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60 (the "Motion"). [D.E. 83].

## ARGUMENT

The Motion seeks relief from the judgment under Fed. R. Civ. P. 60(b)(3) and (6). It is well-settled that the determination whether to reopen a judgment under Fed. R. Civ. P. 60(b) is within the discretion of the trial court.[1] "[W]here the net result of adhering to the letter of [F.R.C.P. 60(b)] is to thwart rather than to promote justice, the Court must be wary of their rigid application. A federal court should not be handicapped in unusual cases by federal rules which

---

[1] *Home Box Office, Inc. v. Spectrum Elecs., Inc.*, 100 F.R.D. 379, 382 (E.D. Pa. 1983).

Case 1:17-cv-24206-JEM   Document 98   Entered on FLSD Docket 07/24/2019   Page 3 of 12

Page 3 of 13

are to be liberally construed to achieve justice."[2]  "[I]n the face of unusual factors, equitable principles encompassed within Rule 60(b) justify further inquiry." *Id*.

A motion for relief from judgment under Fed. R. Civ. P. 60(b)(3) for fraud, misrepresentation or other misconduct by an opposing party is remedial in nature and is to be liberally construed.[3]  This Rule is inherently equitable in nature, and is intended to protect against conduct that has "prevented [a party] from presenting all of his case to court."[4]

Similarly, relief from judgment under the so-called "catch-all," Rule 60(b)(6), for "any other reason justifying relief," is cognizable when there is evidence of extraordinary circumstances or where there is evidence of extreme hardship or injustice.  Once extraordinary circumstances or hardship is found, this rule is to be liberally applied to accomplish justice.[5]  The court may permit relief from a judgment under this Rule where a party demonstrates extraordinary circumstances which "rendered him unable to prosecute his case."[6]

As explained in *Ungar*, "[b]ecause Rule 60(b)(6) is a catch-all provision, its contours are peculiarly malleable.  Thus, hard-and-fast rules generally are not compatible [with the Rule]."[7]  Rather, courts use a "holistic approach" that "rests on fact-specific considerations informed by the nature and circumstances of the particular case." *Id* at 83.  For example, in *Ungar*, the court set-aside a three (3) year old default judgment entered against the Palestine Liberation Organization (PLO), based upon the PLO's claims of changing political winds, "political extremism" within the PLO and given the "uniqueness of the case" and the "political" factors inherent to that defendant. *Id* at 86.  Similarly, in *Klapprott*, involving facts similar to those at-issue here, extraordinary circumstances were found and the judgment was set-aside because the movant was imprisoned at the time the judgment was entered.[8]

Based upon the foregoing principles of law, Plaintiff asserts it is entitled to relief from the judgment at-issue.  This Reply will address the arguments raised in opposition:

I. **Failure to Comply With S.D.L.R. 7.1(a) ("Meet and Confer")**

---

[2] *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir. 1970).
[3] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978)
[4] *Chrysler Corp. v. Superior Dodge, Inc.*, 83 F.R.D. 179, 185 (D. Md. 1979)
[5] *U.S. v. McDonald*, 86 F.R.D. 204, 208 (N.D. Ill. 1980)
[6] *Cmty. Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002)
[7] *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 84 (1st Cir. 2010)
[8] *Klapprott v. U.S.*, 335 U.S. 601 (1949)

S.D.L.R. 7.1(a)(3) requires parties to meet and confer prior to filing of any certain enumerated motion. Admittedly, Plaintiff did not meet and confer and Plaintiff apologizes for its oversight. However, the Motion at-issue here is in effect a dispositive motion (*i.e.* seeking to re-open closed litigation) and, generally speaking, dispositive motions are not subject to the meet and confer requirement of S.D.L.R. 7.1(a)(3). Regardless, Plaintiff asserts that a good faith conferral would have been fruitless in light of the factual context laid out above and in light of the nature of the relief sought. In sum, Plaintiff respectfully asks this Court to consider the merits of this Motion, an accepted practice,[9] and excuse the Plaintiff's failure to meet and confer.

## II.     Failure to Provide Evidence in Support of Motion

Defendants argue that the Motion should be denied because the Plaintiff failed to provide supporting evidence. [D.E. 94 at pp. 9-10]. Herein, Plaintiff offers supporting affidavits of LARA, her husband, ELIE, and LARA's undersigned counsel, therein attesting to the facts alleged in the Motion and pleadings, and rebutting the Defendants affidavits. See **Exhibit 1-3**.

Plaintiff also offers text messages dated April 3-11, 2019, as between Plaintiff's counsel, and a Lebanese attorney named Majed Bouez,[10] establishing the facts at-issue: namely, that: (i) LARA and ELIE were taken hostage at the behest of Defendants, (ii) that Defendants demanded the dismissal of this action in exchange for their release and would not agree to do so until proof of same was to Defendants. See **Exhibits 3** at "Composite Ex. A" pp. 1-5 (Bouez Texts). These text messages corroborate the averments of both LARA and ELIE, and detail undersigned counsel's frantic attempts to secure their freedom over the course of an approximate nine (9) day time period. *Id*. These text messages detail Defendants direct involvement in the hostage taking:

> [4/4/19, 1:35:46 PM] Lberk: So he [ELIE] is in jail right now?
> Majed Bouez: Yes.
> Lberk: Why? **Because of macaron complaint**?
> Majed Bouez: **And mkana complaint**.");
> [4/5/19, 7:37:22 AM] Lberk: Do we know why they have not been released?
> Majed Bouez: I am still waiting the dismiss. . . **Ziad mkana is making sure that Lara dismisses the case at (sic) us**.

See *Id* at p. 1. (**emphasis added**)

---

[9] *Niedermeier v. The Office of Max S. Baucus*, 153 F.Supp. 2d 23 (D.C. Circ. Ct. July 24, 2001) (Excusing a violation 'meet and confer' requirement, given the "judicial preference for resolving motions on their merits rather than dismissing them on technicalities."

[10] Majed Bouez is a Lebanese attorney recommended for LARA to use by Lebanese officials. He has since been discharged. LARA, in Exhibit "1," asserts that Majed Bouez was not acting within her best interests, insofar as he suggested LARA to return to Lebanon, resulting in the detainment and extortion that followed.

Plaintiff also attaches text messages dated April 8-9, 2019, as between Plaintiff's counsel and Defendant MACARON. <u>See</u> **Exhibit 1** at "Composite Ex. B" (Macaron Texts). These texts further establish the direct involvement of *all* of the Defendants in the hostage taking of LARA and ELIE and the extorted dismissal at-issue here. There, MACARON expressly conditioned the release of LARA and ELIE on the dismissal of this lawsuit, and even sent specific release language that must be used, releasing indivdiually *each* of the Defendants:

> [4/8/19, 3:17:30 PM] Dany Macaron: **Hello this is the lawyer Dany Maakaron** from Lebanon . . . pls I will send you an what's up (sic) text to be added to finalize the case of Lara and Elie **so they can be released**. . .
> [MACARON sends .doc version of release language, a copy is attached]
> LBerk: I have received it. I will type it up and sign it. . .
> [4/8/19, 5:20:25 PM] Dany Macaron: Pls if you can send it as soon as possible . . . tomorrow the realase (sic) can be done (request *the name of **Mr. Pascan Wadih antoun** (lawyer and colleage). Fady Wadih layoun. Marlene Wadih layoun. **Mona omar bach**. **Rolly George Mansour**. **Alexandre George Mansour**. And if possible **all other names mentioned in the case**.
> Lberk: Yes, I am working on it.

*Id*. (**emphasis added**)

Finally, Plaintiff also attaches hereto further documentary evidence supporting the estate theft allegations raised in pleadings and the Motion. This includes a check dated April 15, 2011 from a U.S. bank, J.P. Morgan Chase, showing the transfer of funds from the U.S. bank account of LARA's aunt, EVELYN. <u>See</u> **Exhibit 4**. A check dated September 9, 2011 from Arab Bank, PLC, a U.S. bank.[11] *Id*. This establishes the estate theft allegations raised in the pleadings because, as per the testimony of LARA, these checks show the theft of proceeds from a land sale within the estate of EVELYN. <u>See</u> **Exhibits 1 and 4**.

The affidavits of LARA, ELIE and Plaintiff's counsel, taken together, prove the facts alleged in the Motion. The checks, text message logs and other documents corroborate the veracity of this testimony. All of the foregoing evidence demonstrates the direct and concerted efforts by Defendants to extort the Plaintiff, sufficient to establish by clear and convincing evidence that the dismissal should be set-aside.

---

[11] As stated on their company website, Arab Bank, PLC, is a multi-national bank operating in five (5) continents, including in the U.S. See: https://www.arabbank.com/smartmenu/banking-solutions/ways-to-bank/branch-network. To be sure, Arab Bank, PLC operates in the U.S. and the U.S. has determined that they are a "bank" and a "financial institution" operating in the U.S. See: https://www.fincen.gov/sites/default/files/enforcement_action/arab081705.pdf

### III. The Motion is Untimely

Defendants argue that the Motion should be denied because the Motion is untimely. [D.E. 94, at p. 10-11]. Here, the Final Order of Dismissal was entered on April 8, 2019. [D.E. 82]. **Less than eight (8) weeks later**, on June 3, 2019, LARA filed the Motion. [D.E. 83]. However, recall that, LARA and ELIE were not released from detainment *until April 11, 2019*, and were not back in the U.S. until sometime thereafter. See **Exhibits 1-2**.

Fed. R. Civ. P. 60(c)(1) requires only that relief from the judgment is sought within a "reasonable" time. Given the unique the imprisonment, torture and extortion at-issue, the Plaintiff sought relief in a reasonable time. The delay is reasonable considering the trauma and fear of reprisal, which necessitated careful consideration prior to filing this Motion.

All of the cases cited by Defendants are factually and procedurally dissimilar. For example, the five-month delay in *Stansell* was due to the fact that Herrera's counsel was not licensed.[12] In *Central Operating Co.*, after failing to respond to the complaint, the four-month delay after receiving notice of their *default judgment* was met without any explanation.[13] In *Jones*, Phillips was served with a motion for default, then a notice of the evidentiary hearing on same, *months* in advance, before a *default judgment* was entered. Phillips waited an additional five (5) weeks to seek relief, and offered no excuse for her delay.[14]

In sum, Plaintiff's less than eight (8) week delay in seeking relief is clearly reasonable in light of the unique circumstances at play. None of the cases cited by the Defendants are remotely on-point, in terms of their facts, and indeed most of those cases dealt with an inexcusable delays in seeking relief from *defaults* after ignoring lawsuits.

### IV. Failure to Allege Any Conduct Justifying Relief from Judgment under F.R.C.P. 60(b)(3)) and Failure to Allege "Extraordinary Circumstances" Justifying Relief from the Judgment Under F.R.C.P. 60(b)(6)

Defendants also argue that Motion should not be granted because Plaintiff has failed to allege any conduct justifying relief from the judgment under Fed. R. Civ. P. 60(b)(3) and that there are no "extraordinary circumstance" under Rule 60 (b)(6). [D.E. 94, at p. 12-14].

---

[12] *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 738 (11th Cir. 2014) ("Even assuming again that we should not expect Herrera to have filed his motion before his attorney was licensed, the five-month delay that followed his licensure surely was unreasonable.")

[13] *Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) ("Defendants waited almost four months after receiving notice of the default judgments before filing their motions to vacate. They provide no satisfactory explanation for this delay")

[14] *Jones v. Phipps*, 39 F.3d 158, 161 (7th Cir. 1994)

Defendants argue that their conduct fails to justify relief from the judgment under Rule 60(b)(3) for "misconduct by opposing party" nor under (b)(6) for "any other reason that justifies relief."

Defendants attempt to obfuscate the facts by injecting a series of red herrings (*e.g*. the "criminal defamation actions"). Per Defendants version, LARA and ELIE were lawfully[15] arrested in Lebanon, for a criminal defamation case allegedly initiated in Lebanon against LARA, surrounding her purported defamation *in Lebanon*. [D.E. 94, pp. 6-7]. The Defendants have not offered any *admissible* evidence as to what Lebanese law provides. *Id*. Nor have they established the existence of these purported "criminal defamation" proceedings or *when* they were initiated, if ever. Regardless, Defendants characterize LARA and ELIE's imprisonment and torture as "questioning" perpetrated under Lebanese law, and frame the extorted dismissal of this action as a "settlement." [D.E. 94, at p. 6]. This is demonstrably false.

On careful scrutiny, Defendants story does not stand up to logic. First, even accepting, which Plaintiff does not, that arrest and detention is lawful in Lebanon in "criminal defamation" cases (if one exists), this does not explain why LARA's husband, ELIE, *a U.S. citizen*, was also arrested and imprisoned in Lebanon. Nor why he was not released unless this action was dismissed. Even if Lebanese law does allow for LARA *herself* to be arrested, the Defendants fail to explain why ELIE was also arrested, as he is not alleged to have engaged in so-called "criminal defamation" in Lebanon. ELIE's arrest destroys any plausibility to Defendants' claim that the arrest of LARA was legitimate and clearly evidences Defendants' actual intention to extort the dismissal here. The arrest and detention of ELIE is plainly illegal and was intended solely to procure LARA's dismissal of this action. Stand-alone, this is "misconduct by an opposing party" and "extraordinary circumstances" under Rule 60 (b)(3) and (6).

Moreover, if, as Defendants claim, LARA's detention was "lawful," for her purported defamation in Lebanon, then there was no reason to release LARA. Certainly, there was no reason to expressly condition LARA's release upon the dismissal of this lawsuit in a foreign jurisdiction, which Defendants claim to be frivolous. Yet, the release of LARA (and ELIE) was in fact expressly conditioned upon the dismissal of this action, and was only secured on April 11, 2019 *after* proof of the dismissal of this action was delivered to Defendants. Rather, the arrest of

---

[15] Whether in fact it is lawful to arrest and imprison a person for "criminal defamation" in Lebanon is unknown. The Defendants offers only self-serving testimony as to what they purport Lebanese law to say/allow. These statements by Defendants are not admissible for the purpose of establishing what Lebanese law does or does not say/allow. Moreover, this Court is not tasked or capable of with interpreting Lebanese law.

LARA for "criminal defamation" was a mere pretext (or an ad hoc explanation), perpetrated to ensure this case was dismissed. This is clearly "misconduct by an opposing party" and "extraordinary circumstances" and Fed. R. Civ. P. 60(b)(3) and (6) respectively.

Finally, Defendants also argue that Plaintiff cannot seek relief from the judgment under subsections Fed. R. Civ. P. 60 (b)(3) and (6), based upon the same conduct. [D.E. 94, p. 14-15]. This is an incorrect reading of *Real Property and Residence*, which held that a party cannot seek to evade the one (1) year time limit provided in Rule 60(c)(1) by asserting the motion under Rule 60(b)(6), which has no time limit.[16] This Court can of course consider alternative arguments, raised under both provisions of Rule 60(b), as the facts support such an argument. Indeed, the *Klapprott* case, cited by Defendants, does not support Defendants' reading of the law.[17]

In short, setting aside Plaintiff's overwhelming evidence, Defendants' own version of the facts does not even stand-up to a minimal level of scrutiny. The "criminal defamation" action is presented to this Court to distract from the inescapable fact that LARA and ELIE were both arrested and subjected to inhumane treatment to ensure the dismissal of this case. There is no set of facts more justifying of a relief from judgment under Fed. R. Civ. P. 60(b)(3) or (6).

**V.     Lack of Personal Jurisdiction, Immunity from Suit and International Comity**

Finally, Defendants raises the specter of apparent defenses to the Amended Complaint, suggesting that these serve as a basis for denying this Motion. Specifically, Defendants urge that the Motion should be denied because (i) the Amended Complaint fails for lack of personal jurisdiction as to some or all of the Defendants; (ii) the Defendants are immune from suit; and/or (iii) on grounds of international comity.

---

[16] The *Real Property and Residence* case is not persuasive here. That case dealt with an attempt by the U.S. government to collect taxable costs via a "motion requesting release of cost bond" filed more than one (1) year after the order at-issue did not award costs. The trial court treated the "motion requesting release of cost bond" as a Rule 60(b)(6) motion, thus avoiding the time limitation, and allowing for the recovery of costs. On appeal, the Eleventh Circuit rejected this attempt to avoid the , noting that: "the maximum time limitation of one year that applies to clause (1), (2) and (3) would be meaningless, if after the year period had run the movant could be granted relief under clause (6) for reasons covered in clauses (1), (2), and (3). See *U.S. v. Real Prop. & Residence*, 920 F.2d 788, 791 (11th Cir. 1991) (citing to *Klapprott v. U.S.*, 335 U.S. 601, 614-15 (1949).

[17] See *Klapprott v. U.S.*, 335 U.S. 601, 614 (1949) (There, the petitioner sought a relief from a default judgment entered against him while he was imprisoned, four years earlier. The trial court affirmed the default, finding that there was not an adequate showing of "excusable neglect." In reversing, the U.S. Supreme Court noted that: "The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer . . . Under such circumstances petitioner's prayer for setting aside the default judgment should not be considered only under the excusable neglect, **but also under the 'other reason' clause of 60(b), to which the one year limitation provision does not apply**.")(**emphasis**)

<u>None of these arguments are relevant in opposition to the Motion</u>. This Court is not tasked with deciding, at this premature juncture, the viability of these defenses. This is not at-issue in a motion for relief under Fed. R. Civ. P. 60(b)(3) or (6). Defendants offer no legal authority that this Motion can be denied based upon arguments directed at the merits, when the merits have not even been litigated. Personal jurisdiction, immunity and international comity are all premature defenses found in a motion to dismiss, they are not ripe here. The *only* issue before this Court is whether Plaintiff's have set forth "clear and convincing" evidence that justifies relief from the judgment under Fed. R. Civ. P. 60(b)(3) or (6). Plaintiff has met this burden.

Regardless, out of caution, Plaintiff will briefly address these arguments here.

First, in terms of Defendants' argument that there is no basis for personal jurisdiction over Defendants. The Response assert that the Defendants have no "trace of presence in the United States that could subject them to the general jurisdiction of the Court." [D.E. 94, at p. 16].

The pleadings allege a sufficient basis for jurisdiction over the Defendants. Notably, Defendants' scheme was carried out, in part, *in the U.S.* upon the Plaintiff in this forum, and in doing so Defendants availed themselves to jurisdiction in the U.S. Specifically, the pleadings allege that Defendants stole Plaintiff's funds from EVELYN's estate from and through the transfer of funds held in U.S. bank accounts. [D.E. 7, at p. 2, ¶ 2]. Plaintiff has also offered evidence of Defendants conduct, specifically checks showing transfers from U.S. accounts. <u>See</u> **Exhibit 4**. By taking Plaintiff's property, held in U.S. banks operating in interstate commerce, Defendants availed themselves of this Court's jurisdiction.

Moreover, while Defendants claim they have "no contacts with this forum" [D.E. 94 at p. 2], their Response establish the contrary. Defendants claim that they had a "settlement" with Plaintiff. [D.E. 94, pp. 5-6]. As Defendants framed it, via the "settlement" Plaintiff agreed to dismiss this litigation in exchange for the dismissing/withdrawing claims purportedly pending in Lebanon. Defendants "negotiated" with Plaintiff's undersigned counsel, in this district, to "settle" a case then-pending, in this district. This is itself "an action [by] the defendant purposely directed towards the forum state."[18] The mere "negotiation" with counsel here in this forum, and

---

[18] <u>See</u> *Asahi Metal Industry Co. v. Superior Court,* (1987) 480 U.S. 102, 112 (1987).

the procurement and approval of the "settlement" of a lawsuit here, are intentional contacts with this District establishing jurisdiction for this Court.[19]

Finally, in light of the events that have unfolded since this case was initiated, Plaintiff intends (if this Court grants this Motion) to move for leave to amend its allegations, to bring claims under the Torture Victim Protection Act ("TVPA").[20] This will nullify challenges on personal jurisdiction and immunity, [21] since the TVPA provide for exclusive jurisdiction in the District Courts of the U.S. and are not subject to FSIA immunity. See 28 U.S.C. § 1350.

As to the Defendants' "international comity" argument, this too is meritless. First, it is not even clear what international "proceedings" Defendants refer to. Defendants refer to "multiple" proceedings or "investigations," some allegedly criminal in nature, some not, some dismissed and others apparently on appeal. [D.E. 94 at pp. 4-6]. This Court cannot possibly determine that international comity applies. Second, it appears that all of these "proceedings" actually arose *after* this present litigation was initiated, *not before*, thus comity is irrelevant here.

In short, personal jurisdiction, immunity and international comity are meritless and irrelevant arguments, not to be considered on a Rule 60(b)(3),(6) motion.

## CONCLUSION

In sum, Plaintiff respectfully asserts that it has more then met its burden under Rule 60(b)(3) and (6). This Court should not allow the Defendants to make a mockery of this Court and engage in callous and illegal conduct. Plaintiff simply asks this Court to grant this Motion, and allow the Plaintiff to have this case tried on its merits.

---

[19] See *Szynalski v. Superior Court of Los Angeles Cty*., 172 Cal. App. 4th 1, 4 (Cal. Ct. App. 2009) (Finding minimum contacts sufficient to establish jurisdiction over Szynalski, based upon a settlement agreement entered and approved by a California court, and finding that by accepting the benefits of that settlement, Szynalski ". . . with the understanding that respondent court retained jurisdiction to adjudicate issues relating to the settlement agreement – Szynalski consented to jurisdiction in California for purposes of adjudicating issues arising out of the settlement agreement."); See also: *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 214-216 (6th Cir. 2009) ("In October 2005, SunCoke filed an arbitration proceeding in Paris . . . in late 2005, during the pendency of the arbitration proceeding, a high executive of Ferrostaal . . . traveled to Knoxville for discussions concerning . . . the settlement of the dispute . . . The principals of the two companies then exchanged letters. Dr. Knothe's letter says that they had settled the controversy in the Knoxville meeting. . . . This alleged new agreement. . .and the activities of the parties leading to it and resulting from it should count as contacts in the determination of whether it is fair for Tennessee courts to act as a competent jurisdiction for resolving the dispute arising from the alleged contract that the parties formed there.").

[20] The TVPA provides, in pertinent, that "An individual who under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture shall, in a civil action, be liable for damages to that individual. . ." See 28 U.S.C. § 1350 note § 2(a)(1).

[21] *Yousef v. Samantar*, 552 F.3d 371, 373 (4th Cir. 2009) (". . . we conclude that the [FSIA immunity] does not apply to individuals and, as a result, Samantar is not entitled to immunity under the FSIA.")

## **DEMAND FOR EVIDENTIARY HEARING**

Plaintiff respectfully requests that this Court hold an evidentiary hearing on this matter.

Page 12 of 13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of July, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the service list via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

DANIELS, RODRIGUEZ, BERKELEY, DANIELS & CRUZ, P.A.
*Attorneys for Plaintiff*
4000 Ponce de Leon Boulevard, Suite 800
Coral Gables, Florida  33146
(305) 448-7988 Phone
(305) 448-7978 Fax

By:   */s/ Lorne Berkeley, Esq.*
      Lorne E. Berkeley, Esquire
      Florida Bar No.  146099
      lberkeley@drbdc-law.com
      vmunoz@drbdc-law.com

By:   */s/ Alexander L. Wildman, Esq.*
      Alexander L. Wildman, Esq.
      Fla. Bar No.: 116930
      awildman@drbdc-law.com
      eligonzalez@drbdc-law.com